FILED

2023 Nov-30  PM 03:18
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| ADAM TAYLOR, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.: 2:23-cv-00416-JHE |
| | ) | |
| GRAYSON & ASSOCIATES P.C., et al., | ) | |
| | ) | |
| Defendants. | ) | |

### MEMORANDUM OPINION AND ORDER[1]

Through his amended complaint, Plaintiff Adam Taylor ("Taylor"), proceeding *pro se*, brings this action against Defendants Grayson & Associates, P.C. ("Grayson") and Delicia Harvey ("Harvey," and together with Grayson, "Defendants"). (Doc. 17). Defendants have moved to dismiss the amended complaint. (Doc. 18). Taylor has filed a response in opposition (doc. 20),[2] and Defendants have filed a reply in support of their motion (doc. 21). For the reasons discussed below, Defendants' motion is **GRANTED IN PART** and **DENIED IN PART**.

### I. Legal Standard

Federal Rule of Civil Procedure 12(b)(6) permits dismissal when a complaint fails to state a claim upon which relief can be granted. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations and internal quotation marks omitted).

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73, the parties have voluntarily consented to have a United States Magistrate Judge conduct any and all proceedings, including trial and the entry of final judgment. (Doc. 13).

[2] Taylor's response also includes a motion for injunctive relief and a motion for summary judgment, both of which are discussed below. *See infra*, Section IV.C.

A complaint states a facially plausible claim for relief "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted). The complaint must establish "more than a sheer possibility that a defendant has acted unlawfully." *Id.; accord Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007) ("Factual allegations must be enough to raise a right to relief above the speculative level."). Ultimately, this inquiry is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

To that end, under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain "a short and plain statement of the claim showing the pleader is entitled to relief." "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" are insufficient. *Iqbal*, 556 U.S. at 678. (citations and internal quotation marks omitted). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (citing *Twombly*, 550 U.S. at 557). Further, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." FED. R. CIV. P. 9(b). "[A] plaintiff must plead facts as to time, place, and substance of the defendant's alleged fraud, specifically the details of the defendants' allegedly fraudulent acts, when they occurred, and who engaged in them." *U.S. ex rel. Clausen v. Lab. Corp. of Am., Inc.*, 290 F.3d 1301, 1310 (11th Cir. 2002) (internal quotation marks omitted). "Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." FED. R. CIV. P. 9(b).

The court accepts all factual allegations in the complaint as true on a motion to dismiss under Rule 12(b)(6).  *See, e.g., Grossman v. Nationsbank, N.A.*, 225 F.3d 1228, 1231 (11th Cir. 2000).  However, legal conclusions unsupported by factual allegations are not entitled to that assumption of truth. *Iqbal*, 556 U.S. at 678.

## II. Procedural History

On April 3, 2023, Taylor filed the original complaint in this action, alleging violations of the Americans with Disabilities Act ("ADA"), medical malpractice, intentional infliction of emotional distress, retaliation, interference with access to healthcare, and "possible" insurance fraud.  (Doc. 1).  Defendants[3] moved to dismiss the complaint as an impermissible shotgun pleading.  (Doc. 5).  Taylor opposed the motion to dismiss (doc. 6), and Defendants filed a reply in support of their motion (doc. 12).  In their reply, Defendants alternatively moved for the court to require Taylor to file an amended complaint.  (*Id.* at 2).

After the parties consented to magistrate judge jurisdiction, the undersigned denied the motion to dismiss, but granted Defendants' alternative request to require Taylor to file an amended complaint.  (Doc. 16).  Taylor timely filed an amended complaint (doc. 17), prompting Defendants' instant motion to dismiss (doc. 18).

## III. Facts

Taylor is an individual with a disability.  (Doc. 17 at 2).  In October 2022, Taylor's primary care physician referred him to Grayson, which provides mental health services.  (*Id.* at 2–3).

---

[3] In addition to Grayson and Harvey, Taylor named a number of defendants in the original complaint.  (*See* doc. 1 at 2–3).  Taylor later voluntarily dismissed his claims against defendants other than Grayson and Harvey.  (*See* doc. 6 at 1–2; doc. 11).  None of those defendants ever appeared in this action, and only Grayson and Harvey moved to dismiss the complaint (*see* doc. 5).

3

Taylor had an initial consultation on November 8, 2022, with CRNP Emily Trentacoste.  (*Id.* at 3).  CRNP Trentacoste informed Taylor that she only prescribes medicines and referred Taylor to Harvey, who is a licensed professional counselor.  (*Id.*).  Taylor had a "promising" meeting with Harvey on November 18, 2022.  (*Id.*).  However, Taylor's schedule was "tight," so he requested to use telehealth services for future appointments.  (*Id.*).  Harvey agreed to this, but postponed the next meeting to January 6, 2023, due to holiday plans.  (*Id.*).

Taylor prepared for the telehealth session and called on the morning of January 6, 2023, to confirm it.  (*Id.*).  Grayson's receptionist assured Plaintiff that Harvey would call in at the scheduled time.  (*Id.*).  She did not, forcing Taylor to reschedule for January 13, 2023, and "leaving him feeling disregarded and ignored."  (*Id.*).

Taylor's January 13, 2023 appointment was cancelled.  (*Id.* at 4).  He reached out to Grayson several times both before and after the scheduled 1:00 p.m. appointment time and also to his primary care physician.  (*Id.*).  At 1:28 p.m., Harvey called Taylor to explain that she had only 15 minutes to converse and that the rest of the session would be carried over to the next week.  (*Id.*).

On the next appointment date, January 20, 2023, Taylor's call was cut short after one minute.  (*Id.* at 5).  Harvey did not make a return call, causing Taylor "substantial distress, leading to a significant rise in the Plaintiff's blood pressure, and invoking a state of panic and discomfort."  (*Id.*).

Taylor mentioned the ADA and requested reasonable accommodations such as "suggesting being transferred, or conferenced in, or called back, even if later in the day, and/or any other reasonable solution that would work."  (*Id.*).  Nevertheless, Taylor was only offered another

"intake appointment."  (*Id.*).  Grayson scheduled two additional appointments for January 27, 2023, and February 10, 2023, but Taylor did not receive a call on either occasion.  (*Id.*).

Taylor experienced distress, heightened blood pressure, panic attacks, and feelings of despair as a result of Defendants' conduct.  (*Id.* at 6).  Taylor felt forgotten and overlooked, and his distress required medical attention.  (*Id.*).  Ultimately, Taylor switched to a new primary care physician and was referred to a provider that accommodated him.  (*Id.* at 5–6).

### IV. Discussion

Taylor's amended complaint contains four counts: (1) Violation of the ADA and ADAAA; (2) Violation of Section 504 of the Rehabilitation Act and Equitable Telehealth Access; (3) Intentional Infliction of Emotional Distress; and (4) Medical Negligence.  (Doc. 17 at 6–8). Defendants argue the entire complaint is an impermissible shotgun pleading and that each individual count is independently insufficient.  Taylor's response also contains motions for injunctive relief and a motion for summary judgment.  Each of these is discussed below.

#### A. Shotgun Pleading

In the order requiring Taylor to amend his complaint, the undersigned stated:  "When drafting the amended complaint, Mr. Taylor should also keep in mind that a "shotgun pleading" (as described in Defendants' motion to dismiss (doc. 5 at 7)) would still be subject to dismissal." (Doc. 16 at 2–3).

The Eleventh Circuit has "identified four rough types or categories of shotgun pleadings." *Weiland v. Palm Beach County Sheriff's Office*, 792 F.3d 1313, 1321 (11th Cir. 2015).

> The most common type—by a long shot—is a complaint containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint. The next most common type, at least as far as our published opinions on the subject reflect, is a complaint that does not commit the mortal sin

of re-alleging all preceding counts but is guilty of the venial sin of being replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action. The third type of shotgun pleading is one that commits the sin of not separating into a different count each cause of action or claim for relief. Fourth, and finally, there is the relatively rare sin of asserting multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against. The unifying characteristic of all types of shotgun pleadings is that they fail to one degree or another, and in one way or another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests.

*Id.* at 1321–23 (footnotes omitted).

Defendants contend without any real elaboration that Taylor's amended complaint remains a shotgun pleading.  (Doc. 18 at 9–10).  Defendants argue "the facts are largely conclusory, vague, and difficult to follow," the amended complaint is "missing many factual allegations that are necessary to determine if Plaintiff has any viable causes of action," and "much of what is alleged are just conclusory statements rather than plain statements of fact . . . ." (*Id.* at 9).  In other words, Defendants contend Taylor's amended complaint is (to use the Eleventh Circuit's taxonomy) a Type II shotgun pleading.

Liberally construing the amended complaint, Defendants are incorrect regarding its facts. They are presented in chronological order in enough detail that Defendants and the court can readily determine, as a factual matter, what Taylor says happened.  There are arguably some extraneous facts in the amended complaint, but none of them are so extraneous that they are unconnected to Taylor's narrative.  To the extent that Defendants argue there are facts missing from the complaint, that goes more to whether Taylor has stated a claim than whether his amended complaint is a shotgun pleading.  Accordingly, the amended complaint is not due to be dismissed as a shotgun pleading.

## B. Other Grounds

The remainder of Defendants' motion to dismiss attacks the sufficiency of each count of Taylor's complaint. (Doc. 18 at 10–13). Despite Taylor's amended complaint, Defendants' new motion to dismiss is essentially identical to their original motion to dismiss. (*Compare id. with* doc. 5 at 10–12). The undersigned addresses Defendants' arguments as to each count below.

### 1. Count 1 and 2 – ADA and Rehabilitation Act/Equitable Telehealth Access Claims

Defendants raise two arguments for dismissal of these claims.[4] First, they contend Taylor "makes no allegation of what the accommodation needed to be that was then denied." (Doc. 18 at 11). Second, they argue Taylor lacks standing to assert these claims. (*Id.*). Because the standing argument implicates the court's jurisdiction over Taylor's claim, the undersigned addresses it first.[5]

#### a. Standing

Defendants contend Taylor lacks standing under the ADA because he does not intend to return to Grayson. (Doc. 18 at 11–12). That said, their argument and the cases they cite relate to standing under the Article III of the United States Constitution. Article III standing is a threshold

---

[4] Defendants also include a third argument: that there "are no facts that support Count 5 (interference with access to healthcare) against Grayson or Harvey, although [Taylor] does make some conclusory statements regarding the other defendants." (Doc. 18 at 11). This is a leftover argument from Defendants' original motion to dismiss (*see* doc. 5 at 10–11); Taylor does not include a Count 5 in his amended complaint.

[5] Defendants' argument is actually a facial attack on the court's subject-matter jurisdiction, since they contend that the allegations in the complaint are insufficient to support standing and do not rely on matters outside the pleadings. *See Garcia v. Copenhaver, Bell & Assocs., M.D.s*, 104 F.3d 1256, 1261 (11th Cir. 1997). This argument is actually considered under Rule 12(b)(1), not Rule 12(b)(6). That said, the court takes the allegations in the complaint as true when considering a facial attack on subject-matter jurisdiction, *see Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990), so there is little difference in the analysis below.

7

issue, as a federal court has jurisdiction to decide only "Cases" and "Controversies." *Sierra v. City of Hallandale Beach, Fla.*, 996 F.3d 1110, 1112 (11th Cir. 2021).   A plaintiff has Article III standing if he can establish (1) an injury in fact (2) that is fairly traceable to the defendant's conduct and (3) that is redressable by a favorable decision. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992).  Defendants' argument goes to the first prong of the inquiry.

"To establish an injury in fact, the plaintiff must demonstrate that he suffered 'an invasion of a legally protected interest which is (a) concrete and particularized; and (b) actual or imminent, not conjectural or hypothetical.'"  *Sierra v. City of Hallandale Beach, Fla.*, 996 F.3d 1110, 1113 (11th Cir. 2021) (quoting *Lujan*, 504 U.S. at 560).   "An injury is particularized when it 'affect[s] the plaintiff in a personal and individual way.'"  *Id.* (quoting *Lujan*, 504 at 560 n.1).   "To be concrete, the injury must be 'real, and not abstract.'"  *Id.* (quoting *Spokeo, Inc. v. Robins,* 578 U.S. 330, 340 (2016)).   To be "actual" or "imminent" for the purposes of a damages action, a court considers whether a past harm occurred.  *Id.* (citing *City of Los Angeles v. Lyons*, 461 U.S. 95, 105 (1983)).

Defendants cite two out-of-circuit decisions to support their otherwise conclusory argument that Taylor lacks standing to pursue his claims: *Smith v. Bradley Pizza,* 821 F. App'x 656 (8th Cir. 2020), and *Harty v. W. Point Realty, Inc.*, 28 F.4th 435 (2d Cir. 2022).  Both of these cases involve ADA "testers," who inspect for ADA compliance without necessarily intending to use the services of the businesses they inspect.  In *Smith*, a potential customer filed an ADA claim against a restaurant owner based on obstructions that would allegedly have prevented the customer from accessing the restaurant, although the customer never actually left his car or attempted to enter.  The Eighth Circuit held that the district court properly granted summary judgment to the restaurant.  *Smith*, 821 F. App'x at 658.  There was no evidence that the potential customer

intended to enter the facility; instead, the most the plaintiff could muster was that he intended to return to the restaurant "some day." *Id.* In *Harty*, a plaintiff visited a hotel booking website to determine whether it complied with the ADA. The Second Circuit found that the plaintiff lacked standing because he had not alleged he intended to use the website's services for future travel. *Harty*, 28 F.4th at 443.

Neither case is binding law in this circuit, and both are distinguishable. First, Taylor is not an ADA tester. Accepting Taylor's complaint as true, Taylor *actually* experienced the injury that was only arguably hypothetical in *Smith* and *Harty*: Taylor attempted to use Defendants' telehealth services with the intention of receiving healthcare (as discussed further below), and Defendants failed to accommodate him by making them available. Furthermore, the law in the Eleventh Circuit is directly contrary to *Smith* and *Harty*. In *Sierra*, *supra*, the Eleventh Circuit found that "[a]n individual who suffers an intangible injury from discrimination can establish standing if he personally experienced the discrimination." 996 F.3d at 1113. In other words, the Eleventh Circuit recognizes standing based on "stigmatic injury" solely based on experiencing discrimination, regardless of whether the plaintiff intends to actually use the services at issue.[6] Defendants' contention that Taylor lacks standing is unpersuasive.

---

[6] In a recent published opinion, the Eleventh Circuit explicitly held that *Sierra* confers standing on a tester like the plaintiffs in *Smith* and *Harty* because experiencing discrimination is enough to confer an actionable stigmatic injury. *Laufer v. Arpan LLC*, 29 F.4th 1268 (11th Cir. 2022). However, the parties to that case later informed the court that "the case was moot—and, indeed, that it had been moot at the time of [the] decision." *Laufer v. Arpan LLC*, No. 20–14846, 2023 WL 5209551, at *1 (11th Cir. Aug. 15, 2023). The Eleventh Circuit therefore vacated its earlier decision. *Id*. Nevertheless, the undersigned finds the analysis in *Laufer* to be persuasive and an accurate statement of the law in this circuit.

### b. Merits

Although Taylor has *standing* to pursue his ADA and Rehabilitation Act claims, that does not necessarily mean he has stated a claim for either count. Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. The Rehabilitation Act says that no disabled person "shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . ." 29 U.S.C. § 794. In order to recover under either statute, a plaintiff must establish: (1) that he is a qualified individual with a disability, (2) that he was either excluded from participation in or denied the benefits of the services, programs, or activities of a public entity or otherwise discriminated against by such entity, and (3) that the exclusion, denial of benefit, or discrimination was by reason of such disability. *Charles v. Johnson*, 18 F.4th 686, 702 (11th Cir. 2021) (Rehabilitation Act); *Bircoll v. Miami-Dade Cnty.*, 480 F.3d 1072, 1083 (11th Cir. 2007) (Title II).

Defendants argue Taylor's claims fail because Taylor "makes no allegation of what the accommodation needed to be that was then denied." (Doc. 18 at 11). In other words, Defendants contend that Taylor cannot establish the second element of an ADA or Rehabilitation Act claim. According to the complaint, the accommodation Taylor requested was to receive care by telehealth services, and Defendants effectively denied this accommodation by failing to follow through on telehealth appointments. Taylor's complaint includes facts to support that he requested telehealth services on November 18, 2022 (doc. 17 at 3), that he mentioned the ADA and requested accommodations on January 20, 2023 (*id.* at 5), and that Grayson and Defendant Harvey ultimately

failed to provide telehealth services despite Taylor's requests.  Count 1 states that Defendants' "failure to provide reasonable modifications, i.e., reliable telehealth services, constitutes a clear violation of the ADA" and that Taylor "specifically requested the use of telehealth services as a reasonable accommodation to access mental health care effectively." *(Id.* at 6–7).  Count 2 states that Defendants' "failure to provide accessible telehealth services constitutes discrimination based on disability . . . ." (*Id.* at 7).  Defendants are incorrect that Taylor's complaint lacks allegations to support the accommodation he requested, and their motion is due to be denied as to Counts 1 and 2.

### 2. Count 3 – Intentional Infliction of Emotional Distress ("IIED")

Defendants contend the conduct Taylor has alleged is insufficient to support a claim for IIED.  (Doc. 18 at 12–13).  The Alabama Supreme Court first recognized the tort of outrage, or IIED, in *American Road Service Co. v. Inmon*, 394 So. 2d 361 (Ala. 1981). To establish an IIED claim, a plaintiff must show that:

> (1) the actor intended to inflict emotional distress, or knew or should have known that emotional distress was likely to result from his conduct; (2) the conduct was extreme and outrageous; (3) the defendant's actions caused the plaintiff distress; and (4) the distress was severe. *Harris v. McDavid*, 553 So. 2d 567 (Ala. 1989). The conduct alleged must be "so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society." *Id.* at 570; citing *American Road Service Co. v. Inmon*, 394 So.2d 361, 365 (Ala. 1980).

*Shepherd v. Summit Mgmt. Co.*, 726 So. 2d 686, 694 (Ala. Civ. App. 1998).

> The determination as to whether "evidence is sufficiently extreme or outrageous to support a cause of action for outrageous conduct is for the trial court to make as a matter of law." *Carter v. Harris*, 64 F. Supp. 2d 1182, 1194 (M.D. Ala. 1999) (granting summary judgment on outrage claim). In analyzing whether conduct is sufficiently extreme and outrageous to support a claim of outrage, the Court must be mindful that outrage is a very limited cause of action. *See, e.g., Thomas*, 624 So. 2d at 1044. The Alabama Supreme Court has found that a jury question exists in only three types of cases: (1) those involving wrongful conduct with regard to

> family burials; (2) those involving barbaric methods employed to coerce an insurance settlement; and (3) those involving egregious sexual harassment. *See, e.g., Potts v. Hayes*, 771 So. 2d 462, 465 (Ala. 2000) (nurse failed to establish jury question on outrage claim against her employer and former supervisor despite having suffered emotional and physical distress when accused publicly of being a drug addict, thief and danger to the public); *Carter v. Innisfree Hotel, Inc.*, 661 So. 2d 1174 (Ala. 1995) (affirming summary judgment on outrage claim where plaintiffs alleged that a "peeping tom" watched them through scratches in their hotel room's bathroom mirror).

*Leeth v. Athens/Limestone Hosp., Inc.*, 2009 WL 10688796, at *2 (N.D. Ala. July 23, 2009) (citing

*Hardesty v. CPRM Corp.*, 391 F. Supp. 2d 1067, 1073 (M.D. Ala. 2005)).

Here, Taylor alleges that Defendants' failure to make and keep appointments qualifies as IIED. Regardless of Taylor's emotional distress, this type of conduct is not so extreme or outrageous that it "go[es] beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society," *Harris*, 553 So. 2d at 570. It does not fall within one of the three types of cases the Alabama Supreme Court has found constitute IIED, nor is it close to the same level of severity as any of them. Accordingly, Taylor has failed to state a claim for IIED, and Count 3 is due to be dismissed.

### 3. Count 4 – Medical Malpractice

Finally, Defendants contend Taylor has failed to state a claim for a violation of the Alabama Medical Liability Act ("AMLA"). (Doc. 18 at 11–12). The AMLA, Ala. Code § 6-5-540 *et seq.*, "applies in any action for injury or damages or wrongful death, whether in contract or in tort, against a health care provider for breach of the standard of care." *Ex parte Vanderwall*, 201 So.3d 525, 533 (Ala. 2015) (cleaned up). "To prevail on a medical-malpractice claim, a plaintiff must prove 1) the appropriate standard of care, 2) the doctor's deviation from that standard, and 3) a proximate causal connection between the doctor's act or omission constituting the breach and the

injury sustained by the plaintiff." *Giles v. Brookwood Health Servs., Inc.*, 5 So. 3d 533, 549 (Ala. 2008) (internal quotation marks and citation omitted).

Defendants first argue that the complaint does not support that Taylor ever established a physician-patient relationship with them. (Doc. 18 at 11–12). "Liability for a breach of the standard of care depends, first, on the existence of a duty to the patient, which, in turn, depends on the existence of a physician-patient relationship creating the duty." *Wilson v. Teng*, 786 So. 2d 485, 498–99 (Ala. 2000). "[W]hen the professional services of a physician are accepted by another person for the purposes of medical or surgical treatment, the relation of physician and patient is created*." Id.* at 499 (Ala. 2000) (quoting *Oliver v. Brock,* 342 So.2d 1, 4 (Ala. 1976)). The amended complaint supports that Taylor received a referral to Grayson and had a "promising" meeting with Harvey on November 18, 2022. (Doc. 17 at 3). Taylor also met with Harvey on January 13, 2023, albeit for a shortened visit. (*Id.* at 4). At this stage of the litigation, these allegations are sufficient to support that Taylor established a physician-patient relationship with Defendants.[7]

Next, Defendants assert that Taylor has not asserted an actionable injury under the AMLA because he has only pointed to increased blood pressure and emotional distress. (Doc. 18 at 12). In support, they point to *Houston County Health Care Auth. v. Williams*, 961 So. 2d 795, 811 (Ala. 2006). (*Id.*). However, the injury in that case involved exposure to a hazardous substance.

---

[7] Defendants contend Plaintiff "never asked for help or figured out what was preventing his ability to properly appear" at his telehealth visits, which they say supports that no physician-patient relationship was ever created. (Doc. 18 at 11). This is beside the point in light of the allegations discussed above, but it also mischaracterizes the complaint. The amended complaint indicates that Taylor repeatedly "reached out to Grayson" when he had issues with telehealth visits or cancellations and provided Grayson with an alternative contact number. (Doc. 17 at 4–5).

*Houston County Health Care*, 961 So. 2d at 810 ("the plaintiffs assert that '[i]n this particular case, the exposure is the injury.'").  The plaintiffs alleged that the exposure to the substance caused them mental anguish based on the fear of *eventually* developing further physical injury.  *Houston County Health Care* does not stand for the proposition that mental injuries are never actionable under the AMLA.  In any case, *Houston County Health Care* is distinguishable because Taylor does not assert mental distress based on the fear that some future injury will occur; he alleges the mental distress is an independent injury.  (*See* doc. 17 at 8).  Taylor also alleges heightened blood pressure, panic attacks, and feelings of despair.  (*Id.*).  At this stage, these are sufficient to support an injury under the AMLA.

Defendants' remaining argument is that Taylor has failed to make a 'detailed specification and factual description' of each action/inaction he claims Grayson or Harvey did/failed to do which was below the standard of care."  (Doc. 17 at 12) (citing ALA. CODE § 6-5-551 and *Mikkelsen v. Salama*, 619 So. 2d 1382, 1384 (Ala. 1993)).  Section 6-5-551 states:

> In any action for injury, damages, or wrongful death, whether in contract or in tort, against a health care provider for breach of the standard of care the plaintiff shall include in the complaint filed in the action a detailed specification and factual description of each act and omission alleged by plaintiff to render the health care provider liable to plaintiff . . . .  Any complaint which fails to include such detailed specification and factual description of each act and omission shall be subject to dismissal for failure to state a claim upon which relief can be granted.

ALA. CODE § 6-5-551.  Interpreting this section, the court in *Mikkelson* held that a plaintiff "must give the defendant health care provider fair notice of the allegedly negligent act and must identify the time and place it occurred and the resulting harm."  619 So. 2d at 1384.  "If the complaint affords the defendant health care provider fair notice of these essential elements, the courts should strive to find that the complaint includes the necessary 'detailed specification and factual

description of each act and omission alleged by plaintiff to render the health care provider liable to plaintiff'" required by § 6-5-551. *Id*.

Here, Count 4 of the amended complaint contains, under the subheading "<u>Breach of Duty</u>," Taylor's contention that "failing to provide adequate communication and reliable telehealth services" breached the standard of care (doc. 17 at 8). Regardless of whether this was *actually* below the standard of care, Defendants cannot say that they have not received reasonable notice of what Taylor *claims* their negligent acts were. In light of the admonishment to "strive to find" compliance with § 6-5-551 when such notice is given, the undersigned concludes Taylor's complaint does not run afoul of that section. Defendants' motion to dismiss is due to be denied as to Count 4.

### C. Taylor's Motions for Injunctive Relief and Summary Judgment

Taylor's response to the motion to dismiss also includes a cursory request for an injunction and an undeveloped motion for summary judgment. (*See* doc. 20). Both motions are due to be denied.

As injunctive relief, Taylor seeks an order "requiring the Defendants to begin comprehensive ADA training and acknowledgements of their obligations under the law . . . ." (*Id.* at 4). A preliminary injunction is appropriate if the movant demonstrates: (1) a substantial likelihood of success on the merits; (2) that the preliminary injunction is necessary to prevent irreparable injury; (3) that the threatened injury outweighs the harm the preliminary injunction would cause the other litigant; and (4) that the preliminary injunction would not be averse to the public interest. *Nken v. Holder*, 556 U.S. 418, 434 (2009). Taylor has made no argument to support any of these factors, and in any case it appears that he cannot meet the second requirement because his proposed injunction bears no relationship to any injury he is likely to suffer. Since he

bears the burden of persuasion to clearly establish all of the prerequisites for a preliminary injunction, *Wreal, LLC v. Amazon.com, Inc.*, 840 F.3d 1244, 1247 (11th Cir. 2016), and he has not done so, his motion is due to be denied.[8]

As for Taylor's motion for summary judgment, summary judgment is governed by Federal Rule of Civil Procedure 56.  Rule 56(a) states:

> A party may move for summary judgment, identifying each claim or defense — or the part of each claim or defense — on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion.

FED. R. CIV. P. 56(a).  Taylor's motion does not attempt to meet this standard, nor does he comply with the summary judgment procedures outlined in Rule 56(c) and in the undersigned's initial order (doc. 14 at 5).  Furthermore, Taylor's motion for summary judgment is premature.  *See Smith v. Fla. Dep't of Corr.*, 713 F.3d 1059, 1064 (11th Cir. 2013) ("Summary judgment is premature when a party is not provided a reasonable opportunity to discover information essential to his opposition."); *Jones v. City of Columbus, Ga.*, 120 F.3d 248, 253 (11th Cir. 1997) (explaining that "the party opposing a motion for summary judgment should be permitted an adequate opportunity to complete discovery prior to consideration of the motion").  Taylor may move for summary

---

[8] Additionally, the court is not authorized to issue an injunction directing a party to merely obey the law. *See Elend v. Basham*, 471 F.3d 1199, 1209–10 (11th Cir. 2006) ("It is well-established in this circuit that an injunction demanding that a party do nothing more specific than 'obey the law' is impermissible."); *Burton v. City of Belle Glade*, 178 F.3d 1175, 1201 (11th Cir. 1999) ("As this injunction would do no more than instruct the City to 'obey the law,' we believe that it would not satisfy the specificity requirements of [Federal Rule of Civil Procedure] 65(d) and that it would be incapable of enforcement.").

judgment, consistent with Rule 56 and the initial order, at the appropriate time, but for now his motion will be denied.

## V. Conclusion

For the reasons stated above, Defendants' motion to dismiss (doc. 18) is **GRANTED IN PART** to the extent that Count 3 of Taylor's amended complaint is **DISMISSED WITH PREJUDICE**.  Defendants' motion is otherwise **DENIED**.

Taylor's motion for injunctive relief (doc. 20 at 4) is **DENIED**.  Taylor's motion for summary judgment (*id.* at 3–4) is **DENIED WITHOUT PREJUDICE** to his ability to file a motion for summary judgment in the future.

Defendants are **DIRECTED** to answer the amended complaint by **December 14, 2023**. Consistent with their notice to the court (*see* doc. 15), the parties are further **DIRECTED** to file their report pursuant to Federal Rule of Civil Procedure 26(f) by **January 2, 2024**.

DONE this 30th day of November, 2023.

_____
**JOHN H. ENGLAND, III**
UNITED STATES MAGISTRATE JUDGE