# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| ADAM TAYLOR, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No.: 2:23-cv-416-JHE |
| ) | |
| GRAYSON & ASSOCIATES, P.C., et al., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION[1]

Plaintiff Adam Taylor ("Taylor") filed his Amended Complaint against Grayson and Harvey on July 21, 2023.[2] (Doc. 17). Taylor alleged in his Amended Complaint that Grayson and Harvey violated his rights under the ADA and Section 504 of the Rehabilitation Act. (Doc. 17 ¶ 1). He also asserted state-law claims of medical malpractice and intentional infliction of emotional distress against Grayson and Harvey. (*Id.* ¶ 2). Grayson and Harvey moved to dismiss the

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73, the parties have voluntarily consented to have a United States Magistrate Judge conduct any and all proceedings, including trial and the entry of final judgment. (Doc. 13.)

[2] On April 3, 2023, Taylor initiated this action against Defendants Med Help 280, LLC; Med Help Rx, LLC; Grayson & Associates, P.C. ("Grayson"); Jordan F. Vaughn, M.D.; Kay Ellen W. Willoughby, M.D.; Beverly Sue Bridges, CRNP; and Delicia Harvey, LPC ("Harvey"), Counselor, alleging that defendants violated the Americans with Disabilities Act (ADA) and asserting state law claims of medical malpractice, intentional infliction of emotional distress, retaliation, interference with access to healthcare, and insurance fraud. (Doc. 1). Defendants Grayson and Harvey filed a motion to dismiss the complaint on May 15, 2023. (Doc. 5). On May 31, 2023, Taylor responded to the motion and moved to terminate all defendants from the matter except for Grayson and Harvey. (Doc. 10). The undersigned granted the motion to terminate and, therefore, only defendants Grayson and Harvey remained in the matter. (Doc. 11). The undersigned then denied Grayson and Harvey's motion to dismiss, and allowed Taylor thirty days to file an amended complaint. (Doc. 16).

Amended Complaint on August 4, 2023. (Doc. 18). The undersigned granted the motion in part, and dismissed with prejudice Taylor's claim of intentional infliction of emotional distress ("IIED"). (Doc. 22; Doc. 17 at 7). Grayson and Harvey filed a joint answer on December 22, 2023. (Doc. 25). Defendants moved for entry of a Qualified HIPAA Protective Order (doc. 29), to which Taylor responded with objections and a motion for summary judgment (doc. 31). The undersigned granted the defendants' motion for entry of a HIPAA order, denied without prejudice Taylor's motion for summary judgement (doc. 33), and entered a Qualified HIPAA Protective Order on February 8, 2024 (doc. 34). Taylor moved for reconsideration (doc. 35) and, following briefing, the undersigned denied Taylor's motion for reconsideration and ordered him to show cause why his claims for declaratory and injunctive relief, as well as his claims under Title III of the ADA are not due to be dismissed for lack of Article III standing. (Doc. 47). Taylor responded to the order to show cause on August 28, 2024. (Doc. 48).

Grayson and Harvey filed the pending motion for summary judgment on November 8, 2024. (Doc. 54). The undersigned set briefing deadlines, but Taylor failed to timely respond and, instead, moved for leave to file his response out of time. (Doc. 56). Defendants objected (doc. 58) and, following oral argument, the undersigned granted Taylor's motion to file an out-of-time response to Defendants' motion for summary judgment (doc. 60). To the extent Taylor included in his motion for leave to file a response out-of-time a motion to add new parties or causes of action, that motion was denied. (Doc. 60). Defendants' motion for summary judgment has now been fully briefed.[3] (See Docs. 61, 62).

---

[3] Taylor stated in his response to Defendants' motion for summary judgment that "Plaintiff's Motion for Summary Judgment should be granted." (Doc. 61 at 1). As such, the undersigned will

**I. Legal Standard**

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Rule 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the initial burden of proving the absence of a genuine issue of material fact. *Id.* at 323. The burden then shifts to the nonmoving party, who is required to "go beyond the pleadings" to establish there is a "genuine issue for trial." *Id.* at 324. (citation and internal quotation marks omitted). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The court must construe the evidence and all reasonable inferences arising from it in the light most favorable to the non-moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, (1970); *see also Anderson*, 477 U.S. at 255 (all justifiable inferences must be drawn in the non-moving party's favor). Any factual disputes will be resolved in Plaintiff's favor when sufficient competent evidence supports Plaintiff's version of the disputed facts. *See Pace v. Capobianco*,

---

treat Taylor's response to Defendants' motion for summary judgment as a renewal of his previously filed motion for summary judgment. In finding that the defendants are entitled to summary judgment, the undersigned is already taking the facts favorably to Taylor. As such, he could not prevail on the reversed standard that would be used to address his motion for summary judgment. For the reasons set forth hereinbelow, Taylor's motion for summary judgment is **DENIED.**

283 F.3d 1275, 1276-78 (11th Cir. 2002) (a court is not required to resolve disputes in the non-moving party's favor when that party's version of the events is supported by insufficient evidence). However, "mere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion." *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005) (per curiam) (citing *Bald Mtn. Park, Ltd. v. Oliver*, 836 F.2d 1560, 1563 (11th Cir. 1989)). Moreover, "[a] mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) (citing *Anderson*, 477 U.S. at 252).

## II. Summary Judgment Facts[4]

Taylor was referred to Grayson for mental health treatment by his primary care physician in October of 2022. (Doc. 17 at 2). He attended his initial consultation on November 8, 2022, with Emily Trentacoste, CRNP. (*Id.* at 3). Trentacoste is not a counselor, and Taylor was scheduled for an appointment with Harvey on November 18, 2022. (*Id.*)

Taylor states that his appointment with Harvey on November 18, 2022, was "promising" but, "due to [his] tight schedule, [Mr. Taylor] requested the use of telehealth services for future appointments. (Doc. 17 at 3). Harvey agreed to the telehealth arrangement, and Taylor's next appointment with her was scheduled for January 6, 2023. (*Id.*) Taylor called Grayson on the morning of that appointment and indicated that the was afraid he might miss the link for the

---

[4] Taylor does not set out a cogent fact section in his response to the defendant's motion for summary judgement. (Doc. 61). As such, the undersigned will pull facts from Mr. Taylor's Amended Complaint. (Doc. 17). In certain instances, Mr. Taylor cites from his original Complaint (doc. 1). However, the Amended Complaint supersedes and replaces the Complaint. As such, the undersigned will not consider facts that are set out in the Complaint but not in the Amended Complaint.

telehealth appointment or may not be able to navigate the telehealth platform. (*Id.*) The receptionist for Grayson told Taylor that Harvey would call him at the time scheduled for the appointment. (*Id.*) However, Taylor did not receive a call and, when he reached back out to Grayson, he was instructed to wait for the next appointment set for January 13, 2023. (*Id.*) On January 13, Taylor received e-mails from Grayson cancelling his appointment for that day. (*Id.* at 4). He contacted Grayson twice prior to the 1:00 PM appointment time and twice after. (*Id.*) After this, Taylor contacted his primary care physician for assistance. (*Id.*)

Harvey called Taylor on January 13, 2023, at 1:28 PM and spoke with him for 15 minutes, telling him that the remainder of the session would be carried forward to his appointment scheduled for the next week. (*Id.*) Taylor also provided Grayson with an alternate contact telephone number. (*Id.*) Taylor alleges that he 'specifically mentioned' the ADA and requested reasonable accommodations, but was only offered another intake appointment. (*Id.* at 5). Grayson scheduled additional appointments for Taylor on January 27, 2023, and February 10, 2023. (*Id.*) Mr. Taylor indicates that he did not receive calls during the set times for the appointments on those days. (*Id.*) When he later changed primary care providers he was "referred to a provider who offered prompt follow-ups and a solid telehealth protocol." (*Id.*)

Mr. Taylor alleges that his experiences have caused him to suffer from "exacerbated distress," heightened blood pressure, panic attacks, and feelings of despair. (*Id.* at 6). He indicates that this caused him to seek medical intervention and had a negative impact on his mental health. (*Id.*) Mr. Taylor states that his experience with his "new mental health service provider has been positive and encouraging," and that the new provider "adheres to established telehealth protocols, regularly communicates with [him], and genuinely demonstrates care for their patients." (*Id.*)

      In his amended complaint, Mr. Taylor requests the following relief:

> "1. A declaration that the Defendants violated the ADA, Section 504, and other applicable laws.
> 2. An injunction mandating the Defendants' immediate and sustained compliance with the ADA and Section 504.
> 3. Compensation for past, present, and future physical, emotional, and psychological harm suffered as a direct result of Defendants' violations and negligence.
> 4. Restitution for all out-of-pocket expenses incurred due to Defendants' violations and negligence.
> 5. Punitive damages to punish the Defendants for their egregious conduct and to deter them and others from engaging in similar conduct in the future.
> 6. Attorneys' fees and costs, as permitted by law.
> 7. Any other relief the Court deems just and proper."

(Doc. 17 at 10).

### III. Analysis

#### A. Standing

    Defendants argue in their motion for summary judgment that Taylor lacks standing to bring his ADA and Rehabilitation Act claims. The undersigned discussed Taylor's apparent lack of standing in the August 14, 2024, memorandum opinion and order. (Doc. 47). In the opinion, the undersigned notes that Mr. Taylor "appears to lack standing to pursue any claims for injunctive or declaratory relief and that such claims therefore are subject to dismissal" and that "because Article III standing implicates subject-matter jurisdiction, courts are bound to raise a potential lack of such standing themselves, even if no party questions it." *See Williams v. Reckitt Benckiswer LLC*, 65 F. 4th 1243, 1254 (11th Cir. 2021). (*Id.* at 10). Given the foregoing, the undersigned ordered Mr. Taylor to show cause why his claim for declaratory and injunctive relief, as well as his claims under Title III of the ADA and the Rehabilitation Act are not due to be dismissed for lack of Article III standing. As previously noted, "Plaintiff's ADA claim is brought pursuant to Title III of that

Act, for which declaratory and injunctive relief are the only remedies potentially available; that is, no money damages or other relief for past harm is available in a private suit." *See* U.S.C. §§ 12188(a)(1), 2000a-3(a); *Houston v. Marod Supermarkets, Inc.*, 733 F.3d 1323, 1329 (11th Cir. 2013); *Jairath v. Dyer*, 154 F.3d 1280, 1283 & nn. 7 & 8 (11th Cir. 1998); *Thomas v. Murphy Oil Corp.* 777 F. App'x 377, 379-80 (11th Cir. 2019); *Berkery v. Kaplan*, 518 F. App'x 813, 814 (11th Cir. 2013). (Doc. 47 at 12-13).

> To establish standing, a plaintiff must show (i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-561 (1992). Moreover, a plaintiff must demonstrate standing separately for each form of relief sought. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 436 (2021). "Thus, even if a plaintiff can establish standing to pursue separate claims for monetary relief based on allegations of *past* harm, before a court may grant that plaintiff injunctive relief, the plaintiff must separately establish a threat of 'real and immediate,' as opposed to 'conjectural or hypothetical,' future injury." *Williams v. Reckitt Benckiser LLC*, 65 F.4th 1243, 1253 (11th Cir. 2023) (*quoting City of Los Angeles v. Lyons*, 461 U.S. 95, 102, 105, (1983) (emphasis in original)). "When a plaintiff seeks an injunction, [they] must demonstrate that a future injury is imminent." *Kennedy v. Floridian Hotel, Inc.*, 998 F.3d 1221, 1229-30 (11th Cir. 2021).

(Doc. 47 at 10).

In his response to the undersigned's order to show cause, Taylor seeks "either ongoing psychotherapy services from Grayson until a specified future date or until Plaintiff secures employment and achieves the therapeutic goals initially intended when selecting Defendants as providers," "the number of sessions that Defendants canceled or missed," and is "willing and seeking to use any appropriate services of the Defendants, granted with any type of relief this court grants and sees as proper." (Doc. 48 at 2-3, 4). He further indicates that he plans to use Grayson's services in the future because they are "the 'largest mental health care provider in the state.'" (*Id.* at 5). Finally, Taylor notes that he would accept a "referral" to another provider from defendant

Harvey and that he "has used the Defendant's services many times throughout the years." (*Id.* at 3, 4).

None of these explanations establish a threat of real and immediate harm to support Taylor's claims for injunctive relief. Taylor cites several cases that he alleges bolster his argument that he has standing for injunctive relief. However, the cases Taylor cites are distinguishable from the facts of his case, and a comparison of the facts illustrate that Taylor has not shown that he is under threat of real and immediate harm. Taylor first points to *Gaylor v. North Springs Associates, LLLP*, an unpublished Eleventh Circuit opinion in which the appellate court determined that the plaintiff established a sufficient risk of future injury to establish standing under Article III of the ADA by submitting an affidavit stating that he "drove past [the shopping center] when visiting his family in Mableton, Georgia, and his doctors in Atlanta, Georgia." 648 Fed. App'x 807, 809 (11th Cir. 2016). Plaintiff further stated in his affidavit that he "expect[ed] to frequent the [shopping center] at least 4-5 times a year when [visiting his] doctors' offices." *Id.* (internal quotations omitted). In *Gaylor*, the Eleventh Circuit refers to its decision in *Houston v. Marod Supermarkets, Inc.* in which the plaintiff established a threat of imminent harm by indicating his plans to shop at the defendant supermarket in the future and showing that the supermarket was located on the way to Houston's attorneys' office which he traveled to on a regular basis. 733 F. 3d 1323, 1326-1327 (11th Cir. 2013). Unlike Gaylor and Houston, Taylor does not indicate any specific plan to resume treatment with Harvey or at Grayson. Instead, Taylor indicates that he is "willing and seeking" to use defendants' services if using those services is directed by the court. (Doc. 48 at 4).

"The showing of future injury necessary to establish standing relates to the plaintiff's plan and intent to return to the defendant's facilities or use their services in the future and is distinct from the merits." (Doc. 47 at 10). Further, "[w]hether a plaintiff faces a real and immediate threat

of future injury must be examined under the 'totality of all relevant facts.'" (*Id.* at 11) (*quoting Kennedy*, 998 F.3d at 1231). Per the Eleventh Circuit's analyses, there are four factors relevant to determining whether the plaintiff faces a real and immediate threat of future injury: "(1) the proximity of the defendant's business to the plaintiff's residence; (2) the plaintiff's past patronage of the defendant's business; (3) the definiteness of the plaintiff's plan to return; and (4) the frequency of the plaintiff's travel near the defendant's business." *Kennedy*, 998 F.3d at 1231 (quoting *Houston*, 733 F.3d at 1337 n.6.) Taylor does assert that he has patronized Grayson in the past. However, he does not argue that any of Grayson's locations are closer to his home or place of work than his current provider. Finally, as previously discussed, Taylor does not allege a definite plan to seek services from Harvey or at Grayson in the future. If anything, Taylor's response to the Order to Show Cause indicates that he would *only* seek additional treatment or services from the defendant(s) *if* the court ordered it.

Taylor has not shown an immediate risk of future harm that would justify injunctive relief. Because injunctive relief is the only relief available under Title III of the ADA's private right of action, Mr. Taylor's ADA claims are due to be **DISMISSED** for lack of standing.

In addition to his claims under Title III of the ADA, Taylor brought claims under § 504 of the Rehabilitation Act, alleging that "[t]he Defendants' failure to provide accessible telehealth services constitutes discrimination based on disability, violating Section 504." (Doc. 17 at 7). In addition to declaratory and injunctive relief, Taylor seeks punitive damages, attorney fees, "compensation for past, present, and future physical, emotional, and psychological harm suffered as a direct result of Defendants' violations and negligence," and "[r]estitution for all out-of-pocket expenses incurred due to Defendants' violations and negligence." (*Id.* at 9-10). As noted in the Order to Show Cause,

> Unlike Title III of the ADA, § 504 allows recovery of damages for a past violations in private suits, but not for emotional distress, *Cummings v. Premier Rehab Keller, P.L.L.C.*, 596 U.S. 212 (2022), or punitive damages. *Barnes v. Gorman*, 536 U.S. 181 (2002). To the extent compensatory damages are available under § 504, the plaintiff must prove intentional discrimination, which requires a showing of at least deliberate indifference to the plaintiff's federally protected rights. *See Silberman v. Miami Dade Transit*, 927 F.3d 1123, 1134 (11th Cir. 2019). Further, because plaintiff is pro se, that is, they have no attorney, they are ineligible for an award of attorney's fees, on any claim. *See Kay v. Ehrler*, 499 U.S. 432 (1991); *Wilf v. Bd. of Regents of the Univ. Sys. of Georgia*, 2010 WL 11469573, at *2 (N.D. Ga. July 6, 2010); *L.J. v. Broward Cnty. Sch. Bd.*, 2007 WL 1695333, at *5 (S.D. Fla. June 8, 2007).

(Doc. 47, n. 18).

Mr. Taylor has not established standing for claims of injunctive or declaratory relief for the reasons already discussed hereinabove. Further, as previously noted, he is not entitled to punitive damages, attorney fees or, as he puts it, damages for "future physical, emotional and psychological harm." As such, the only potential standing for relief under § 504 would be for compensatory damages related to the defendants' alleged past violation of the Rehabilitation Act. The undersigned will address Taylor's arguments regarding the same on the merits.

**B. Remaining Claims**

**1. Rehabilitation Act Claims**

To show entitlement for compensatory damages sustained due to the defendants' past violation of the Rehabilitation Act, Taylor must present a question of fact regarding intentional discrimination. He has not done so. To establish that the defendants engaged in intentional discrimination, Taylor must show at least "deliberate indifference." *Silberman*, 927 F.3d at 1134. Deliberate indifference "requires proof that 'the defendant knew that harm to a federally protected

right was substantially likely and . . . failed to act on that likelihood.'" *Id.* (quoting *Iliese v. Indian River Cty. Hosp. Dist.*, 701 F.3d 334, 348 (11th Cir. 2012)).

Taylor has not presented evidence that the defendants were aware of his alleged disabilities or that failing to provide telehealth appointments would somehow exacerbate the same.[5] First, although he indicates that he informed the defendants that he was a person with a disability pursuant to the ADA and would need accommodations, Taylor does not provide any evidence of such a proclamation. In his response to the undersigned's order to show cause, Mr. Taylor produced a therapy note from January 13, 2023, written by defendant Harvey that indicates Mr. Taylor spoke with her on the telephone and said, "he can't leave work but needed to schedule additional app[ointments]." (Doc. 48-3 at 6). He also produced an e-mail from Theodora Bryant to defendant Harvey dated January 6, 2023, that says "[patient] states that he cannot leave work. . ." (*Id.* at 11). Another e-mail dated January 13, 2023, at 10:14 a.m. states that Mr. Taylor called and said, "he can't leave work." (*Id.* at 12). An e-mail on the same date at 10:35 a.m. from Mr. Taylor requests a call back. (*Id.* at 13). Mr. Taylor e-mailed again on January 13, 2023, at 1:23 p.m. stating that he received a message informing him that someone from Grayson was trying to

---

[5] Throughout the filings in this matter, Taylor has alleged disabilities due to being hard of hearing, having attention deficit hyperactivity disorder (ADHD), and his generalized anxiety disorder (GAD). He makes clear in his response to the motion to summary judgment, however, that the only disability he is alleging the defendants failed to accommodate is his GAD. *See* (Doc. 61 at 7) ("The Plaintiff has *never* suggested or stated that anyone provide the Plaintiff with telehealth for any reason related to his hearing disability.") (emphasis in original); (Doc. 61 at 14) ("Just as with the Plaintiff's hearing disability, the Plaintiff has never suggested or stated that anyone provide the Plaintiff with telehealth for any reason related to his ADHD.")

contact him for his appointment. (*Id.* at 14). None of these documents indicate any request from Mr. Taylor for a disability accommodation at all.

In his response to the defendants' motion for summary judgment, Mr. Taylor states that he had "fears and anxiety (GAD) regarding requesting time off or schedule adjustments that were needed to attend the in person appointments." (Doc. 61 at 3). He notes that he only had one hour for lunch and "did not want to violate any workplace policies. . ." (*Id.*) Mr. Taylor further complains that "there are many" accommodations other than telehealth appointments "that could have been provided or proposed that simply were not even considered and no interactive process ever took place." (*Id.* at 4). He then goes on to list what he considers to be some reasonable accommodations. (*Id.* at 4-5). Mr. Taylor reiterates his argument that his "original request for accommodations, for telehealth due to anxiety (GAD) of job loss, and for accurate and clear communications, are reasonable requests. . ." (*Id.* at 5). However, Mr. Taylor does not present any evidence whatsoever beyond his own statement that he ever requested an accommodation for either of the defendants based on an alleged disability.[6] (*See* Doc. 61, generally).

To overcome the defendants' the motion for summary judgment, Taylor is required to "go beyond the pleadings" to establish a "genuine issue for trial." *Celotex*, 477 at 322. Taylor has provided no evidence that he informed the defendants of his disability, so he cannot show a question of fact as to whether the defendants were aware that a federally protected right may be

---

[6] Mr. Taylor attempts to characterize the defendants' objections in this lawsuit to his request to file an out-of-time response to the defendants' motion for summary judgment as deliberate indifference. (Doc. 61 at 6-7). However, Mr. Taylor cannot conflate objections made by defendants' counsel during litigation with actions taken by defendants' themselves during the time-period relevant to this lawsuit.

violated and were deliberately indifferent to the same. As such, Taylor also lacks standing to assert any claims under § 504, and his claims are due to be **DISMISSED** for lack of standing.

### 2. Alabama Medical Liability Act Claims

Taylor's remaining claim is for medical negligence, which is governed by the Alabama Medical Liability Act ("AMLA"). *See* Ala. Code §§ 6-5-480 *et seq.*; 6-5-540 *et seq*. To establish liability for medical malpractice in Alabama, the plaintiff bears the burden at trial to prove: (1) the appropriate standard of care, (2) the provider's deviation from that standard, and (3) a proximate causal connection between the deviation and the plaintiff's injury. *Hauseman v. University of Alabama Health Services Foundation*, 793 So.2d 730, 734 (Ala. 2000). In most cases, the plaintiff must prove their claim through testimony from a medical expert who is "similarly situated" to the provider whose acts or omissions gave rise to the action. *See* Ala. Code § 6-5-548(b), (c), (e); *Hauseman*, 793 So.2d at 734; *Magee v. United States*, 2023 WL 4623611, at *3 (11th Cir. July 19, 2023); *see Univ. of Ala. Health Servs. Found. V. Bush*, 638 So.2d 794, 802 (Ala. 1994). He must prove that the alleged negligence probably caused, rather than only possibly caused, the plaintiff's injury. *Univ. of Ala. Health Servs. Found.*, 638 So.2d at 802.

The defendants argue that Mr. Taylor failed to meet this burden after defendants submitted a declaration by defendant Harvey that the treatment she "provided to Mr. Taylor met or exceeded the standard of care applicable to a licensed practical counselor in 2022 and 2023," and that none of her actions or inactions "constituted a breach of the applicable standard of care which proximately caused harm to Mr. Taylor." (Doc. 54-3). Although Harvey's evidence is her own declaration, it is sufficient to shift the burden to Taylor to show evidence of a deviation from the standard of care. *See Pettigrew v. LeRoy F. Harris, M.D., P.C.*, 631 So. 2d 839, 841 (Ala. 1993) (quoting *Swensden v. Gross*, 530 So. 2d 764, 768 (Ala. 1988) ("[O]nce the defendant offers expert

testimony in his behalf (albeit his own opinion), establishing lack of negligence, the defendant is entitled to a summary judgment, unless the plaintiff counters the defendant's evidence with *expert* testimony in support of the plaintiff's claim." (citation omitted; emphasis added)).[7]

Taylor argues that Harvey failed to abide by various portions of the Code of Ethics and Standards of Practice for counselors in Alabama. (Doc. 61, Doc. 61-12). However, he provides no evidence from a similarly situated expert as defined in Alabama Code § 6-5-548 to support those assertions, nor does he provide any evidence that he himself is an expert. (*See* Doc. 61). Taylor's justification for failing to provide expert evidence is two-fold. First, he argues that he has noted that he included a letter from Dr. Westerman (doc. 61 at 5-6; doc. 61-2) and that he has "requested supporting documentation from Ms. Nault, which he intends to supplement the record with as soon as he receives" (doc. 61 at 7; doc. 61-3). Second, and alternatively, he argues that his case falls within the exception to the requirement for expert testimony rule because Harvey's "want of skill or lack of care is so apparent . . . as to be understood by a layman, and requires only common knowledge and experience to understand it." (Doc. 61 at 7, citing *Woods v. United States 2023 WL 2364425,* at \*10 (N.D. Ala. Jan. 19, 2023) (internal citations omitted)).

First, mere reference to Drs. Westerman and Nault does not constitute expert testimony sufficient to support Taylor's argument that the defendants "failed to exercise such reasonable care, skill, and diligence as other similarly situated health care providers in the same general line

---

[7] "In this case, the defendant, Dr. Harris, supported his motion for summary judgment with an affidavit of its own; that affidavit made a prima facie showing of a lack of negligence. That affidavit was sufficient to shift the burden to the plaintiffs to present evidence establishing an issue of material fact." *Pettigrew*, 631 So. 2d at 841 (citing *Swensden v. Gross*, 530 So. 2d 764, 768 (Ala. 1988)).

of practice ordinarily have and exercise in a like case." Ala. Code. § 6-5-548(a). The letter provided by Dr. Westerman states as follows:

> To Whom It May Concern,
>
> Adam has been a patient of mine since 11/26/24. I have seen him monthly due to medication adjustments. He has been diagnosed with the following conditions:
>
> F41.1 Generalized anxiety disorder
> F32.A Depression, unspecified
> F90.9 Attention-deficit hyperactivity disorder, unspecified type
>
> During this time period as we were adjusting medications, he experienced heightened anxiety and decrease in executive function while switching from one medication to another which may have contributed to difficulty in completing requested documentation. His symptoms are now more stable on his current medication regimen. Please take this into consideration for extension to complete requested documentation.

(Doc. 61-2).

This correspondence provides no opinion whatsoever regarding the standard of care for counselors, whether Harvey's treatment met the standard of care, nor does it establish Dr. Westerman as a similarly situated expert. As such, the letter from Dr. Westerman is insufficient to meet Taylor's burden. Further, despite his statement that he "plans to supplement the record" with evidence from Ms. Nault, the deadline for discovery has long-since passed, and Taylor has provided no evidence from a similarly situated expert. (*See* Docs. 28 and 61, generally). As such, to the extent Taylor's response to defendants' motion for summary judgment also constitutes a request to perform additional discovery or submit further evidence, that motion is **DENIED**.

Second, Taylor's argument that Harvey's actions fall within the expert testimony exception also fails. To fall within the exception, the "lack of care [must be] so apparent as to be within the comprehension of the average layman." *Leonard v. Providence Hosp.*, 590 So. 2d 906, 908 (Ala. 1991) (citing *Therrell v. Fond*, 495 So. 2d 1046 (Ala. 1986); *Walker v. Southeast Alabama Medical*

*Center*, 545 So. 2d 769 (Ala. 1989)).  Taylor's complaints center around the defendants not providing him with telehealth appointments and their lack of adequate communication.  *See* (Doc. 61).  Under previous evaluations, situations in which the expert testimony exception have been applied are:

> 1) where a foreign instrumentality is found in the plaintiff's body following surgery; 2) where the injury complained of is in no way connected to the condition for which the plaintiff sought treatment; 3) where the plaintiff employs a recognized standard or authoritative medical text or treatise to provide what is or is not proper practice; and 4) where the plaintiff is himself or herself a medical expert qualified to evaluate the doctor's allegedly negligent conduct.

*Hannah v. Naughton*, 328 So. 3d 777, 791 (Ala. 2020) (internal quotes and citations omitted).  In *Hannah*, the plaintiff argued that, following an abnormal Pap smear she was told that she had cervical cancer and needed a radical hysterectomy, only to find out after the surgery that she never had cancer.  *Id.* at 782-783.  The Supreme Court of Alabama determined that "Hannah's claims do not fall within the layperson exception to the rule that a plaintiff must support his or her medical-malpractice claim with expert testimony from a 'similarly situated health-care provider' in relation to the defendant medical professional."  328 So. 3d at 793.

Taylor's allegations of medical negligence do not rise to the level of the examples listed in *Hannah*.  Further, Taylor's allegations of failure to provide telehealth and lack of consistent communication do not rise to the level of the plaintiff's allegations in *Hannah* which, according to the Supreme Court of Alabama, were also not sufficient to overcome the expert testimony requirement.  As such, Mr. Taylor has not met his burden to show that there is a reasonable question of fact as to whether the defendants committed medical negligence under AMLA.  Therefore, the defendants' motion for summary judgment is due to be **GRANTED** as to Mr. Taylor's medical negligence claim.

**IV. Plaintiff's Request to Amend Complaint**

In his "Original Response" to the motion to summary judgment (doc. 61-13), Mr. Taylor requests leave to amend his complaint to add his children as additional plaintiffs and to add Emily Trentacoste as a defendant.  (Doc. 61-13 at 39).  Plaintiff attempted to add Ms. Trentacoste as a defendant and add his children as plaintiffs in his response to the defendants' objection to his motion to file a response to the motion for summary judgment out of time.  (Doc. 56).  The undersigned previously denied this request for leave because the deadline to add parties has passed. (Doc. 60 at 2).  Once again, Mr. Taylor's motion to add new parties or causes of action to this case is **DENIED**.

**V. Conclusion**

For the reasons set out herein, the defendants' motion for summary judgment (doc. 54) is hereby **GRANTED**. Taylor's claims under Title III of the ADA and his claims for declaratory or injunctive relief, punitive damages, attorney fees and damages for "future physical, emotional and psychological harm" under § 504 of the Rehabilitation Act are **DISMISSED WITHOUT PREJUDICE** for lack of standing.  Taylor's claims under the AMLA and his claims for compensatory damages under § 504 of the Rehabilitation Act are **DISMISSED WITH PREJUDICE**.  To the extent Taylor's response to the motion for summary judgment (doc. 61) also contains a request to add parties and/or causes of action to his case, the motion is **DENIED**. Further, Plaintiff's cross motion for summary judgment (doc. 61) is **DENIED**.

DONE this 26th day of September, 2025.

_____
**JOHN H. ENGLAND, III**
UNITED STATES MAGISTRATE JUDGE